**John F. CIEMPA, Plaintiff-Appellant,**

**v.**

**Andrew E. CONFORTI, and Dorothy Drewniak, Defendants-Appellees.**

**No. 74–1339.**

United States Court of Appeals, First Circuit.

Argued Dec. 2, 1974.

Decided Dec. 9, 1974.

**4**

W. Wright Danenbarger, Manchester, N. H., with whom Wiggin, Nourie, Sundeen, Pingree & Bigg, Manchester, N. H., for plaintiff-appellant.

Clifford J. Ross, Manchester City Sol., for defendants-appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

PER CURIAM.

This is an action brought pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983 by a prospective, and eventually unsuccessful, candidate for the New Hampshire legislature, alleging that the practices adopted in the ward in which he was running deprived him of due process. The complaint sought an injunction. The court held an evidentiary hearing, and then dismissed the complaint, both for failure to state a cause of action, and on the basis of the facts found. In light of the broad allegations of the complaint we might have some question as to the propriety of the first of these rulings, but we sustain the second.

It appeared that the plaintiff was running against a candidate who, at the time, was the Ward Clerk. The Moderator in charge of the election had a standing rule that candidates must stay beyond the door of the polling place, except when voting, but there was a further exception, and the cause of this dispute: the Ward Clerk is expected to work inside the polling place, even if a candidate. The court found,

"As Ward Clerk, Mrs. Drewniak spends all of Election Day in the polling place working under the direction of the Moderator. Her main tasks are to check off absentee ballots and to determine, by telephoning the City Clerk's office, whether or not people who are not on the checklist should have been placed on the checklist for Ward 6. She has nothing to do with voting and has nothing to do with the checklist. She is not seated so that she has access to any voters prior to the time that they actually vote. She can, however, be seen by voters as they proceed by the checklist to the voting machines. She does not and, of course, could not do any electioneering in the polling place, but she does say hello to friends and neighbors or wave to them."

Strictly, under these circumstances, greeting by speaking, waving, and presumably smiling, may be thought a mild form of electioneering. At the same time one could hardly expect a candidate who is spoken to, or waved to, not to respond. To ignore the greeter would be electioneering in reverse.

We must feel that perfection would dictate that the candidate not be in the polling place at all, or, at least, not be stationed where voters could see her before they had voted. We do not conceive our duty, however, to require us to supervise state elections to that degree. There are no racial overtones in this case, no deliberate discrimination, and no electioneering beyond the minimum involved in the carrying out of the candidate's regular activities implicit in her current office. There are various ways in which individuals already in office have, or may be thought to have, certain minor advantages. That does not automatically make a federal case.

Affirmed.